No. 93-028

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MARRIAGE OF

JULIANNE ALLEN,

     Petitioner and Appellant,

  and

PHILIP J. ALLEN,

     Respondent and Respondent.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Lane K. Bennett, Attorney at Law, Kalispell,
Montana

     For Respondent:

          Gregory E. Paskell, Attorney at Law, Kalispell,
Montana

**FILED**

JAN 2 0 1994

Filed: *Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: October 28, 1993

Decided: January 20, 1994

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an order of the Eleventh Judicial District Court, Flathead County, which modified the parties' joint custody arrangement by naming respondent, Phillip J. Allen (Phillip), as the primary residential parent of Kyle Nathan Allen (Kyle). Appellant Julianne Allen (Juli) appeals. We affirm.

While Juli presents several issues on appeal, two issues are dispositive:

1. Did the District Court err by modifying the primary physical custody of Kyle?

2. Did the District Court exhibit an unfair bias or prejudice toward Juli: a) through the Judge's questions and comments during the hearings about Juli's lifestyle and behavior; or b) through Finding of Fact No. 4?

The parties were divorced January 5, 1989, and Juli was awarded sole custody of the parties' minor child, Kyle. Phillip was granted supervised visitation rights. In October 1991, the parties stipulated to modify the custody arrangement. The court approved the stipulation, which provided that the parties were to have joint custody of Kyle with Juli as the primary residential parent and Phillip with unrestricted visitation rights.

On August 11, 1992, Phillip petitioned the court to modify the custody order by naming him the primary residential parent. He alleged that Juli's then-boyfriend, Mark Hindahl (Mark), was physically abusive and threatening to both Juli and Kyle. He

2

further alleged that, Juli's tendency to move out of the house whenever she fought with Mark created an unstable environment which severely endangered Kyle's emotional development. Phillip argued that he and his fiance, Donetta Moor (Donetta), could provide the best environment to meet Kyle's emotional needs. Additionally, since Juli was planning to leave Montana to live with Mark in Arizona, Phillip requested that the court issue a temporary restraining order (TRO) prohibiting either party from removing Kyle from Flathead County.

Following a show cause hearing the court issued a TRO prohibiting the parties from removing Kyle from Flathead County. The modification hearing was held on September 25, 1992, and the court issued its custody order on October 14, 1992. The District Court granted Phillip's request and named him as the primary residential custodian of Kyle, while Juli was to have reasonable visitation rights. Juli appeals.

I

Did the District Court err by modifying the primary physical custody of Kyle?

When a parent seeks to modify a child's primary physical custody without terminating the joint custody arrangement, the district court is compelled to make a "best interest" determination. Section 40-4-224(2); and In re Marriage of Ferguson (1990), 246 Mont. 344, 347, 805 P.2d 1334, 1336. When determining a child's best interest:

> [the court must] consider all relevant factors, including but not limited to:

(a) the wishes of the child's parent or parents as to his custody;
(b) the wishes of the child as to his custodian;
(c) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;
(d) the child's adjustment to his home, school, and community;
(e) the mental and physical health of all individuals involved;
(f) physical abuse or threat of physical abuse by one parent against the other parent or the child; and
(g) chemical dependency, as defined in 53-24-103, or chemical abuse on the part of either parent.

Section 40-4-212, MCA.

Juli argues that the District Court failed to make findings of fact on the specific factors in § 40-4-212, MCA, when it determined Kyle's "best interest." She also argues that she presented overwhelming evidence in support of her position and that evidence should have prevailed. The record and the current status of the law negate her arguments.

It is well established that the district court does not need to make specific findings on each individual factor in § 40-4-212, MCA. In re Marriage of Merriman (1991), 247 Mont. 491, 493, 807 P.2d 1351, 1353. Moreover, when the parties present conflicting evidence, we "will not overturn the District Court's findings unless they are clearly erroneous." Merriman, 807 P.2d at 1353.

Here, the parties presented conflicting evidence about which environment would better suit Kyle's best interest. The court admitted its decision was difficult: "Kyle will likely thrive in the custody of either parent . . . ."

The court's detailed findings of fact support its decision to

4

name Phillip as Kyle's primary residential custodian. Specifically, the court found that Juli's relationship with Mark provided an environment which was unpredictable and filled with tension. Moreover, in an aborted interview with the court, Kyle appeared totally undisciplined and unresponsive while in Juli's care. On the other hand, the court determined that Phillip and Donetta provided a sound and stable environment in which to raise Kyle.

After a careful review of the record, we conclude that the District Court's findings are not clearly erroneous. We hold that the District Court correctly determined that it was in Kyle's best interest to have Phillip as his primary residential parent.

## II

Did the District Court exhibit an unfair bias or prejudice toward Juli: a) through the Judge's questions and comments during the hearings about Juli's lifestyle and behavior; or b) through Finding of Fact No. 4?

Juli argues that the Judge's questions and comments during the hearings about her lifestyle and behavior and Finding of Fact No. 4 imply that the court was unfairly biased or prejudiced against her. She argues that this Court should reverse and remand, and allow a different judge to hear the case.

The court's questioning of Juli at the hearings, was not, as she suggests, an attempt to trap her. Rather, Juli confused the court by suggesting that Kyle was attending kindergarten in Arizona. The District Court questioned Juli about Kyle's

whereabouts. The court was attempting to determine whether Kyle was attending kindergarten in Arizona in violation of the TRO or if he remained in Flathead County. The court's questioning does not imply prejudice against Juli.

Juli further maintains the court's comment, that she led a "vagabond" lifestyle, implies prejudice against her. Although undiplomatic, the court's comment accurately depicts Juli's behavior: packing up and moving out of Mark's household after each fight with Mark. The comment does not indicate that the court was biased against her.

Finally, we determine that the court's statement in Finding of Fact No. 4 that Juli "became pregnant by another man, [but] she chose not to carry her fetus to term[,]" had little or no impact on the court's decision. The court determined that Juli had Kyle's best interest at heart and would make his life productive, challenging and rewarding. The court then concluded that:

> [w]hile Kyle will likely thrive in the custody of either parent, he does seem to be something of an emotional infant in [Juli's] care. [Juli] has only the most fleeting and ineffectual control over Kyle's behavior, and as she adjusts to a new life with her current husband[, Mark,] and continues in counseling with him, Kyle is likely to receive less guidance and stability than would be ideal. On the other hand, [Phillip] and [Donetta] offer Kyle an appropriate measure of discipline and affection. Despite [Phillip's] past personal problems, his relationship with [Donetta] appears to be sound, stable and enduring. For Kyle, the atmosphere in . . . [Phillip's] family home should offer more of the same; all, of course, to his advantage as a young and impressionable child.

Clearly, the court was not biased against Juli. The court simply determined it was in Kyle's best interest that he live with

6

his father in a stable family environment. We hold that the District Court's questions, comments and Finding of Fact No. 4 do not imply that the court was biased or prejudiced against Juli.

Affirmed.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_John Conway Harrison_
Justice

We concur:

Justices